McKikney, J.,
delivered the opinion of the Court.
The object of the bill is to obtain satisfaction of several bills of exchange, of which the bank is holder, out of certain real property mortgaged by the defendants, for rhe indemnity of the complainants, Gr. W. Shaw & Co.
The defendants were extensively engaged in the manufacture of flour, in the city of Memphis; and the complainants, Shaw '& Co., were commission merchants, of New Orleans.
On the 24th of June, 1857, an arrangement was made between them, by which it was agreed that Shaw & Co. should be the sole agents of defendants for the sale of flour in the New Orleans market. In consideration whereof, Shaw & Co. undertook to give the de *701 fendants “ a standing credit, of not exceeding fifteen thousand dollars, in acceptances, haying not less than sixty days to run — this credit and arrangement to extend for six monthsfor which acceptances they were to receive two and a half per cent, commission.
The defendants, Douglass, Dawell & Co., were to make weekly shipments of flour, proportioned to the amount of the acceptances Shaw & Co. might he under; and for the ’sale of the flour the latter were to receive two and a half per cent, commission.
As an indemnity to the complainants, Shaw & Co., the defendants conveyed, in trust, certain real estate, situated in the city of Memphis. The object and intention of the mortgage is stated -on the face of the instrument as follows, namely: '
“ If at the end of six months from this date — at which time the agreements and arrangements hereinbefore set forth are to cease — and if then, after a settlement of accounts, the said Douglass, Dawell & Co. shall be found to be indebted to the said G. W. Shaw & Co., in any amount upon the transactions between the firms aforesaid, then and in that case” the trustee is empowered to sell, &c.
It is alleged, that during the continuance of the above arrangement, bills were accepted by Shaw & Co., for the defendants, to the amount of upwards of $63,000, and beyond tho proceeds of the flour shipped, to the extent of more than $14,000.
It seems, that as the bills were drawn, from time to time, they were regularly purchased by the Branch of the Planters’ Bank at Memphis, from the defendants, and the' proceeds paid out on their checks.
*702 The hank is now the holder of seven of said hills, which remain wholly unpaid; and Shaw and Co. having failed, they have joined with the bank in bringing this bill, to have satisfaction of said unpaid bills out of the mortgaged property.
This is resisted by the defendants. They allege that no settlement has ever been made between Shaw .& Co. and the defendants. They deny any indebtedness on their part to Shaw & Co.; and state in their answer, that the proceeds of the flour shipped by them to the complainants, Shaw & Co., exceed the cash advances on the acceptances of the latter, to the amount of more than three thousand dollars, which sum they claim to be really due to them from Shaw & Co. They also deny that Shaw & Co. are the holders of any of said bills, or that there is any balance in their favor for money paid on their acceptances.
These statements of the answer of defendants are not disproved. And, assuming the facts to be as stated, can any relief be decreed in favor of Shaw & Co., or the bank ?
So far as regards Shaw & Co., we are at a loss to perceive on what principle any decree can be made in their favor, either upon the proper construction of the mortgage deed, or upon general principles of law. The mere fact of the acceptance of the bills, without payment, gives them no right of action against the drawers of the bills. It' is the actual payment of the bill that gives the acceptor, who has paid the amount out of his own funds, the right to maintain an action of assumpsit against the drawer, founded on an implied promise of the latter to the former.
*703 If, therefore, Shaw & Co. could not directly maintain an action against the defendants for the money, upon what principle shall they be allowed, indirectly, to accomplish the same end, hy enforcing a foreclosure of the mortgage? The question needs only to be stated. It requires no answer. And if Shaw & Co. have no claim to such relief a fortiori, the bank, as holder of the bills, can have none.
The indemnity provided was to secure the acceptor for money actually paid upon their acceptances; and not for the security of the indorsee or holder of the hills.
It results, therefore, that the decree dismissing the hill is correct, and it is affirmed.